43 So.2d 140

**DIXIE DRIVE IT YOURSELF SYSTEM, MOBILE CO., Inc. v. HAMES.**

I Div. 590.

Court of Appeals of Alabama.

Aug. 15, 1949.

Rehearing Denied Oct. 5, 1949.

D. R. Coley, Jr., of Mobile, for appellant.

McAleer, Langan & Gaston, of Mobile, for appellee.

HARWOOD, Judge.

The complaint below was in one count and claimed damages of the defendant, the Dixie Drive It Yourself System, Mobile Company, Inc., a corporation, for the alleged negligence of the defendant in per-

mitting a person other than the plaintiff to take from defendant's possession an automobile which had been stored with it under a storage contract between plaintiff and defendant.

The defendant admitted the contract for storage but defended on the ground that the automobile in question had been surrendered to the possession of the third person upon the telephoned instructions of the plaintiff.

A jury trial was waived, and the cause tried before a Special Judge.

The court entered judgment for the plaintiff and assessed damages in the amount of $681.50.

Motion for a new trial was timely filed, and overruled.

The defendant below thereupon perfected its appeal to this court.

The plaintiff, in her own behalf, testified that on June 12, 1947 she made a contract with the defendant for the storage of her automobile on a weekly basis, paying $2.50 for the first week's storage, and after being given a claim check left her automobile in defendant's charge.

On that same night the plaintiff took her car out of defendant's garage, and was required to show her claim check before the car was delivered to her.

She returned the car to defendants the next day, June 13, 1947. Later during that day she, at the request of H. M. Ward, authorized the defendant to let Ward have the car. She gave the claim check to Ward, and he was gone about an hour.

On the following morning, that is June 14, she returned the car to defendant's garage, and received her claim check.

She did not take her car from defendant's garage again, nor did she authorize the defendant to let any one else have the car.

She next saw the car around six o'clock on the afternoon of the 14th of June at a garage in Fairhope. The car had been wrecked.

On cross examination Mrs. Hames testified that at the time she stored her car with defendant she was room clerk and cashier at the Bienville Hotel.

She denied that she had taken the car out of defendant's garage more than twice after she had stored it.

She had known H. M. Ward casually, he having lived at the hotel several months.

Mrs. Hames denied she was with Ward when he took the car out on June 13th, but maintained that some one of defendant's employees had telephoned her at the hotel and asked if it was permissible to let Ward have the car. She denied she had gone with Ward on that day to the Spanish Fort to arrange for a cabin for Ward when he left the hotel.

Mrs. Hames also denied she had seen Ward on June 14th, the day of the wreck, until late at night when a Highway Patrolman told her he was living at Spanish Fort.

The Highway Patrol called her around 5:30 on Saturday afternoon and told her that her car had been wrecked in Baldwin County. She told "them" that it could not be her car as it was in storage at defendant's garage.

She then went to the defendant's garage with a Mr. Ballard, where she saw a small man with curly hair. She denied she had stated on this visit that the man who had borrowed her car had wrecked it, but said she asked for her car.

She then rented a car from defendant and drove over to Baldwin County with Mr. Ballard, returning around eleven that night.

Mrs. Hames denied that when she returned the car she had rented that she wanted to take it out again, but was refused by defendant's employee because she was intoxicated.

The next day, she had her husband procured a vehicle from defendant and drove back to Baldwin County. She went by Spanish Fort, but could not locate Ward.

On Sunday afternoon she got the Highway Patrol and again went to Spanish Fort.

She denied she had ever seen a Justice of the Peace in Fairhope on any visit, but stated that Ballard had seen one on Satur-

day, the 14th, when he went to Baldwin County with her.

On Sunday afternoon she and her husband saw Ward at Spanish Fort and he told her husband he would pay for the damage to her car when he got some money from a bank in California. He was to meet Mr. and Mrs. Hames the next morning, but failed to show up.

Mrs. Hames insisted she had gone to the defendant's place of business on Sunday, and denied she had first seen the defendant's manager on Tuesday, when he had "chewed up" a boy for letting the car out without a ticket. She further denied that Mr. Baggett had told her at any time that he did not think the defendant should pay her anything on the car.

Jack Patrick, a Highway Patrolman, testified that he arrested Ward after he had wrecked plaintiff's car. Ward had been drinking when he was arrested, but was not drunk. He was charged with reckless driving, and driving without a license, on which charges Ward paid fines in Justice of the Peace Perkins' Court in Fairhope.

Ward told Patrick that the car belonged to Mrs. Hames, that he used it once in awhile, and had borrowed it on this occasion.

For the defense Mr. C. A. Lamons testified that he is bookkeeper and counter man for defendant. He was present when Mrs. Hames brought her car in for storage on June 12. He saw Mrs. Hames in the garage the next day, and saw her there some four or five times between then and Saturday, the day the car was taken out by Ward and wrecked.

On Saturday Mr. Lamons said he received a telephone call from Mrs. Hames, whose voice he said he recognized, and she told him Ward was coming over for her car and to let him have it. Mrs. Hames described Ward in this conversation as the man who had been in the garage with her the day before.

Lamons did not see Mrs. Hames again until she came to defendant's garage on Tuesday after the wreck on Saturday. At this time Mrs. Hames maintained she had given Ward permission to use her car on Friday, but had not given him permission on Saturday.

Mr. Baggett, defendant's manager had not "chewed him out" because he had permitted the car to be taken out by Ward on Saturday.

On cross examination Mr. Lamons testified that the only time he had ever talked with Mrs. Hames over a phone was when she called in connection with Ward taking her car out; that he had never talked to her directly, but had heard her talking with other persons when she was at defendant's garage on the previous days.

George E. Berry, a clerk in defendant's garage, testified that he rented a car to Mrs. Hames on the afternoon her car was wrecked. She stated that a friend of hers had her car over at Fairhope and had damaged it. She said nothing about her car having been taken without her permission.

When she returned the rented car about midnight she wanted to take it out again, but he refused to let her have it because she had been drinking.

On cross examination Berry testified he was positive that it was the 12th' of June on which Mrs. Hames rented the car from him. Under her rental contract she could have kept the rented car for 24 hours.

Mr. Perkins, a Justice of the Peace in Fairhope, testified that a day or two after he had handled the criminal charges against Ward the plaintiff and some unknown man came to him and asked about the Ward case. "They" told him that the plaintiff had loaned the wrecked car to Ward to go to Spanish Fort, and he wrecked the car.

Mr. Baggett, defendant's manager, testified that Mrs. Hames did not talk to him on Sunday after the wreck, that he had never seen her until she came in the Tuesday following.

On this Tuesday Mr. and Mrs. Hames came to his office and said they wanted to talk about Mrs. Hames' car being wrecked. He informed them, after some talk, that there was nothing he could do about it.

Mr. Hames gave him a card with Ward's name on it, together with the name of the ship on which he allegedly was a member of the crew. Mr. Hames wanted Baggett to see if he could get in touch with Ward and help the Hames get their money.

In rebuttal Mrs. Hames testified that the card with Ward's name on it was given to Mr. Baggett on Sunday morning in his office.

While there are seven assignments of error, all of them in final analysis are directed toward one point, and that is whether the evidence presented is sufficient to support the judgment rendered for the plaintiff, and to support the action of the lower court·in overruling defendant's motion for a new trial.

■ The defendant below was a bailee for hire, and as such owed a duty of ordinary care toward the bailed property.

■ Where a bailee of goods for hire, upon demand made, fails to redeliver them, or does not account for a failure to make delivery, prima facie, negligence will be imputed to him; and the burden of proving a loss without the want of ordinary care is devolved upon him. Hackney et al. v. Perry, 152 Ala. 626, 44 So. 1029; Davis & Son v. Hurt, 114 Ala. 146, 21 So. 468; Jordan v. Clarke County Farm Bureau Gin Co., 25 Ala.App. 97, 141 So. 360.

Clearly Mrs. Hames testimony tended to establish prima facie her cause of action.

The real crux of defendant's evidence tending to acquit itself of negligence was the testimony of its witness Lamons to the effect that on the day Mrs. Hames' car was wrecked he received a telephone call from Mrs. Hames directing him to turn her car over to Ward. This he did, and without requiring the presentation of a claim check, which Mrs. Hames stated was required of her each time she herself took the car out. Mrs. Hames denied she had made such phone call on the day in question. Lamons had never talked directly to Mrs. Hames, but had heard her talk to others on occasions she had visited· defendant's garage, probably some four or five times. He had never engaged in a conversation with her over·a telephone, other than the time he

says she called to instruct him to turn her car over to Ward. There were no peculiarities inherent in Mrs. Hames' speech tending to bolster an identification of it. It is clearly inferable from the record that Ward was an unreliable character. The trial court may well have concluded under the evidence that the woman who called Lamons was one procured by Ward for the purpose, and was not Mrs. Hames. In addition the car was surrendered to Ward without the presentation of a claim check.

We think that clearly only a question of fact was presented by this phase of the evidence as to whether it was sufficient to acquit the defendant of negligence and overcome the prima facie case established by the plaintiff's evidence.

A large portion of appellant's brief is taken up in pointing out contradictions between Mrs. Hames' testimony and the testimony of various witnesses for the defendant. Again, these contradictions present only a question of fact. Appellant's counsel also attempts to point out what he contends are contradictions evident in parts of Mrs. Hames' testimony. We have examined Mrs. Hames' testimony with care. If contradiction exist therein they are not, in our opinion, serious.

■■ The trial judge had the witnesses before him, and observed their demeanor. His conclusions, after hearing the testimony and passing on the facts have the same force as a verdict of a jury. It should not be disturbed unless palpably wrong, or unless he has failed to give due regard to controlling legal principles as applied to the facts adduced. See Vol. 2 Alabama Digest, Appeal and Error, ☞ 1008(1) for innumerable cases illustrating the above doctrines.

In our opinion the evidence tending to support the conclusions of fact made by the trial judge thereon are substantial; likewise we find no misapplication of the legal principles to the facts involved.

This being so, this cause is due to be affirmed, and it is so ordered.

Affirmed.

BRICKEN, P. J., not sitting.